IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KENITA SPENCER                                                                                              PLAINTIFF

vs.                                            CIVIL NO. 05-5054

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                               DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Kenita Spencer, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act.

**Procedural Background:**

The applications for DIB and SSI now before this court were filed on June 17, 2003, alleging an inability to work since May 15, 2003, due to pain in her back, right hip, ankle, and foot. (Tr. 13, 52-54). An administrative hearing was then held on August 12, 2004, which resulted in an unfavorable decision. (Tr. 237-269).

In a written decision dated, October 18, 2004, the ALJ noted that the objective medical evidence indicated that plaintiff had osteoarthritis in her lumbar spine and left leg radiculopathy with atrophy, both of which were severe. (Tr. 14). However, the ALJ found that these impairments, whether singularly or in combination, were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 14, 21). Further, the ALJ concluded that plaintiff did not have a severe mental impairment. (Tr. 16). As such, he determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 20-

21). Specifically, the ALJ found that plaintiff could lift and/or carry up to ten pounds occasionally and less than that frequently; push and/or pull within those limitations; stand and/or walk up to two hours of an eight-hour workday; and, sit up to six hours out of an eight-hour workday. (Tr. 20-21). In addition, the ALJ determined that plaintiff must have the option to sit or stand every thirty minutes. (Tr. 20-21). Then, based upon the testimony of the vocational expert ("VE"), the ALJ found that plaintiff's past relevant work ("PRW") as an administrative manager was not precluded by her RFC. (Tr. 20-21, 268).

On March 3, 2005, the Appeals Council declined to review this decision. (Tr. 4-8). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Although both parties were afforded the opportunity to file appeal briefs, plaintiff has chosen not to do so. (Doc. # 4).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence

presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged a variety of disabling impairments, including pain in her back, right hip, ankle, and foot. However, neither plaintiff's testimony nor the objective medical evidence supports plaintiff's allegations of disability. The evidence documenting plaintiff's pain reveals as follows. On August 24, 1999, an MRI of plaintiff's lumbar spine revealed small midline disc bulges at the L4-5 and L5-S1, neither of which compromised the neural structures. (Tr. 131, 180, 212). Further, x-rays of plaintiff's lumbar spine completed on November 17, 1999, showed no evidence of fracture or dislocation, and early degenerative changes most pronounced at the L3-4 level. (Tr. 126).

On November 17, 1999, a myelogram suggested a very mild disc bulge at the L4-5 level, with mild effacement of the thecal sac. (Tr. 127). However, a CT scan of the lumbar spine revealed no definite evidence of disc herniation, and a mild disc bulge at the L4-5 level. (Tr. 128).

Plaintiff saw Dr. Vincent Runnels, a neurosurgeon, on October 19, 1999, and November 29, 1999, and he opined that she was neurologically intact, and doing quite well. (Tr. 223). At the November appointment, plaintiff indicated that her leg pain had gone away. (Tr. 220). Dr. Runnels concluded that the results of plaintiff's myelogram did not warrant surgical intervention, and

4

instructed her to return to work, but to avoid lifting heavy money bags. (Tr. 220-221). He opined that she had no permanent disability, and released her from his care. (Tr. 220).

After being released from Dr. Runnels' care in December 1999, plaintiff did not seek further treatment until July 10, 2002, when she saw Dr. Randall Oates and reported that she had hurt her back while lifting at work. (Tr. 135). *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001)(stating that time frame between doctor visits did not support plaintiff's claims). He assessed her with lower back pain, degenerative disc disease, and right piriformis muscle spasms. (Tr. 177). Dr. Oates limited plaintiff to light duty, directing her to avoid a lot of back motion and not to lift over thirty pounds for one week. (Tr. 190).

Plaintiff had no further complaints of back pain until November 22, 2002, when she saw Dr. Ronald Bertram. (Tr. 132). *See id*. She complained of right upper back pain that radiated through to the right front of her back. (Tr. 174). Dr. Bertram noted a decreased range of motion in plaintiff's back. He then recommended that she rest, do home exercises, avoid all heavy lifting, stay off work for three days, stop wearing high heels, and get sensible shoes. (Tr. 132). Dr. Bertram also prescribed Darvocet and Celebrex, both conservative measures to control her pain. (Tr. 174). *See Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998) (holding that claimant had not undergone surgery and relied on conservative treatment); *Robinson v. Sullivan,* 956 F.2d 836, 840 (8th Cir. 1992) (all doctors who treated Plaintiff prescribed conservative treatment).

Although plaintiff alleges an onset date of May 15, 2003, there is limited medical evidence after that date. Plaintiff had a consultative examination with a state agency physician on August 25, 2003. (Tr. 151-157). She complained of back pain that had begun in 1998, stating that it now radiated down her left leg to her knee. (Tr. 151). Plaintiff indicated that she could sit and stand for

5

thirty minutes at a time and walk fifty yards before needing to stop. (Tr. 151). Upon examination, plaintiff had a full range of motion in her cervical spine, a decreased range of motion in her lumbar spine, muscle spasms in the lumbar spine, muscle weakness with left hip flexion secondary to pain, and an abnormal straight-leg raise test. (Tr. 154-155). Further, muscle atrophy was noted in plaintiff's left thigh. (Tr. 155). The state agency physician assessed plaintiff's grip strength at ninety-five percent of normal, and noted that plaintiff could not walk on heel and toes, or squat and arise from a squatting position. He diagnosed plaintiff with osteoarthritis, piriformis syndrome, thyromegaly, and left leg radiculopathy with atrophy. (Tr. 157). The doctor assessed her as having the ability to handle, finger, see, hear and speak without limitations; walk, stand, and sit with moderate limitations; and, lift and carry with severe limitations. (Tr. 157).

Plaintiff saw Dr. Bertram on October 7, 2003, and October 9, 2003, requesting refills of Darvocet and Celebrex, as well as laboratory tests to check her thyroid level. (Tr. 171-172). Her physical exam was normal. (Tr. 172).

After reviewing this evidence, it is clear that plaintiff has not consistently sought treatment for her pain, has sought limited treatment since her alleged onset date, and has only undergone conservative treatment for her condition. Clearly, each of these factors weigh against plaintiff's allegations of disability pain. *See Hogan*, 239 F.3d at 962; *Black,* 143 F.3d at 386; *Sullins v. Shalala,* 25 F.3d 601, 603 (8th Cir. 1994)(in the year since the claimant alleged her disability began, she only sought medical treatment twice).

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. Plaintiff completed a supplemental interview outline on June 13, 2003, and reported that she could care for her personal hygiene; do laundry; do dishes; change sheets with help; iron a little;

vacuum/sweep; shop for groceries and clothing; go to the bank and post office; prepare three meals per week; pay bills; use a checkbook; count change; drive familiar routes; walk for exercise and errands; attend church; watch television; listen to the radio; read; and, visit friends and relatives. (Tr. 76-77). She also reported to Dr. Back that she got along well with her friends and family, could go out to eat with friends, could visit family, and was able to occasionally attend church. (Tr. 218). *See McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003)(holding that plaintiff was able to perform many of the activities associated with daily life); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). It is clear that these are not the type of activities a totally disabled person would be able to perform.

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities support

plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Further, we can find no reason to discount the ALJ's decision to dismiss the testimony of plaintiff's husband. Plaintiff testified that her husband built houses for a living. (Tr. 20, 244). Upon further questioning it was revealed that he was also receiving Social Security Disability payments. (Tr. 20, 266). The ALJ found this to be a negative factor. (Tr. 20). The ALJ also properly concluded that Mr. Spencer's testimony was not credible because it was apparent that he would benefit from any monies received by plaintiff. (Tr. 20). *See Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993) (holding that an ALJ may partially discount the testimony of a witness who has a financial interest in the outcome of a case). Because the determination as to the weight given to a witness' statements was clearly within the ALJ's province, we find no error in his credibility determination. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform a range of sedentary work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC,

*see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, a general physical examination, plaintiff's subjective complaints, and her medical records. On September 5, 2003, Dr. Robert Redd completed a physical RFC assessment. (Tr. 158-167). After reviewing plaintiff's medical records, he concluded that she could lift ten pounds occasionally and less than ten pounds frequently, stand and walk at least two hours during an eight-hour workday, and sit about six hours during an eight-hour workday. (Tr. 159). Further, Dr. Redd noted that plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 160).

As discussed above, the medical evidence does show that plaintiff was suffering from physical impairments involving her back. However, there is nothing in the record to suggest that these activities prevented plaintiff from performing sedentary work. In addition, we also note that there is no evidence that plaintiff's activities were limited by her physicians, or that she reported any self imposed restrictions to her doctors. *See Jones v. Callahan*, 122 F.3d 1148, 1152 (8th Cir. 1997) (holding that a lack of medically ordered restrictions weighs against credibility); *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (same). Therefore, based on the evidence of record, we find substantial evidence supports the ALJ's physical RFC determination.

Likewise, there is no evidence that plaintiff alleges disability as a result of a mental impairment, and no evidence that she ever reported any associated symptoms to her physicians. In fact, the only evidence concerning her mental status is a mental status examination that she underwent with Dr. Richard Back, on May 13, 2004, performed at her attorney's request. (Tr. 15, 215-219). At the time of her exam, plaintiff's main complaints were of back pain, resulting from an accident at work. (Tr. 215). No mental impairments were alleged. Plaintiff even denied ever having undergone inpatient or outpatient psychiatric treatment. (Tr. 215). She reported being a little moodier, but denied having the blues or crying spells. (Tr. 216). Plaintiff stated that she got along well with her friends and family, could go out to eat with friends, could visit family, and was able to occasionally attend church. (Tr. 218). Dr. Back found no evidence of unusual passivity, dependency, aggression, impulsiveness, or withdrawal. (Tr. 218). Further, no thought disturbances were noted, and plaintiff denied any hallucinations, delusions, obsessions, or unusual powers. (Tr. 216).

Dr. Back noted that plaintiff was overly pleasant considering her pain concerns. (Tr. 216). He also indicated that she was easily understood and communicated effectively. (Tr. 218). Dr. Back observed no organicity problems, and estimated her IQ at eighty or greater. (Tr. 217). He concluded that plaintiff's concentration was moderately impaired, but her persistence and pace were satisfactory. (Tr. 218). Dr. Back then diagnosed plaintiff with pain disorder associated with both psychological factors and a general medical condition, as well as adjustment reaction with mixed emotional features. (Tr. 219). He stated that he had clearly identified two or more areas with significant limitations in adaptive functioning, and concluded that, although her I. Q. was eighty, plaintiff's adaptive functioning was consistent with a diagnosis of mental retardation. (Tr. 219).

However, Dr. Back indicated that plaintiff was not mentally retarded, she just had a severely impaired level of adaptive functioning. (Tr. 219).

The ALJ found that Dr. Back's opinion was without substantial support in the record. (Tr. 15). We note that the assessment of a non-treating doctor who has treated plaintiff on only one occasion, standing alone, is not substantial evidence that an impairment exists. *See Browning v. Sullivan,* 958 F.2d 817, 823 (8th Cir. 1992) (finding that the one-time evaluation by a non-treating psychologist is of little significance by itself); *Ostronski v. Chater,* 94 F.3d 413, 420 (8th Cir. 1996) (finding that the physician's opinion was theoretical in tone and unsupported by any clinical signs or findings). Thus, such a report generally necessitates additional medical evidence to substantiate its validity. *See Marolf v. Sullivan,* 981 F.2d 976, 978 (8th Cir. 1992)(holding that proof of a disabling impairment must be supported by at least some objective medical evidence). Accordingly, the ALJ was correct in concluding that there was no basis for Dr. Back's finding that plaintiff had two or more areas with significant limitations in adaptive functioning, and that her adaptive functioning was severely impaired. (Tr. 15). We also find that substantial evidence supports the ALJ conclusion that plaintiff's mental impairments, if any, were non-severe.

We also find that substantial evidence supports the ALJ's finding that plaintiff could return to her PRW as an administrative assistant. The VE testified that plaintiff's PRW included her work as an administrative manager and an assembly job. (Tr. 267). The VE testified that the administrative manager job was skilled, sedentary work, and her assembly job was unskilled, light work. (Tr. 267). The ALJ presented the VE with a hypothetical example of an individual with the same chronological, vocational, and educational background as plaintiff who had the RFC to perform sedentary work. (Tr. 267- 268). He also noted that the individual would need a sit/stand option

every half hour. (Tr. 268). The VE testified that such an individual could perform plaintiff's PRW as an administrative manager. (Tr. 268). As this hypothetical took into consideration the limitations the ALJ concluded were actually caused by plaintiff's impairments, the VE's testimony provided substantial evidence to support the ALJ's finding that plaintiff could return to her PRW. *See Depover v. Barnhart,* 349 F.3d 563, 568 (8th Cir. 2003) (holding that a VE's response to a properly posed hypothetical question supplied substantial evidence to support ALJ's finding that Plaintiff could return to PRW). Further, after reviewing the definition of plaintiff's PRW, as defined in the *Dictionary of Occupational Titles*, it is clear that plaintiff could still perform this position, even if she were limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, as assessed by the non-examining, consultative physician. (Tr. 160). *See* DICTIONARY OF OCCUPATIONAL TITLES § 169.167.034, *at* www.westlaw.com

**Conclusion:**

Based on the foregoing, we recommend, affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this <u>10th</u> day of April 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE